UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JIM PERRON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 1:20-cv-02002-JRS-DLP |
| | ) |
| VEOLIA NORTH AMERICA, LLC, | ) |
| | ) |
| Defendant. | ) |

**Order on Motion for Summary Judgment**

Plaintiff Jim Perron alleges his former employer, Veolia North America, LLC, terminated him because of his age, in violation of the Age Discrimination in Employment Act, ("ADEA"), 29 U.S.C. § 621 *et seq*. Before the Court is Veolia's motion for summary judgment. (ECF No. 35.) For the following reasons, the Court grants Veolia's motion.

**Background**

Perron, currently age sixty-six, began working for Veolia on July 30, 2018, as a director of business development. (Perron Dep. 9, 29, 42, ECF No. 37-1.) In this role, Perron's job "was to get new business," i.e., to convince new clients to contract for Veolia's services. (*Id.* at 38, 75.) However, at the direction of his then-supervisor, Perron spent his first eight months focusing primarily on renewing existing contracts, rather than on bringing in new business. (*Id.* at 42–44, 48.) Perron renewed four contracts, then began focusing on new business. (*Id.* at 48, 245.)

1

On October 23, 2019, Joseph Tackett became Perron's new supervisor. (*Id.* at 55–56; Tackett Dep. 27, 33, ECF No. 35-10.) Tackett's role was to ensure that the directors of business development achieved their objective of recruiting new business. (Tackett Dep. 50, ECF No. 35-10.) Shortly after becoming Perron's supervisor, Tackett reviewed Perron's prior performance and asked Perron to provide a list of sales prospects. (Tackett Decl. ¶¶ 10–14, ECF No. 35-15.) Tackett realized Perron had not yet closed any new business sales, and based on the list of prospects, Tackett concluded Perron was unlikely to close any new business sales in 2019. (*Id.*) Because Perron "was not selling anything," Tackett decided to place Perron on a performance improvement plan. (Tackett Dep. 38, ECF No. 35-10.) Tackett scheduled a meeting for December 16, 2019, and asked Perron to compile information on his sales results and targets. (Perron Dep. 87–97, ECF No. 37-1.) After reviewing that information in the meeting, Tackett produced the performance improvement plan and asked Perron to sign it. (*Id.* at 96–97.)

The plan identified "[c]losing of new opportunities has not met expectations," as the single issue and directed Perron to provide an outline on how he would "address the plan to close new business." (ECF No. 37-17.) Perron understood that Tackett wanted him to generate more new business sales, although Tackett did not suggest any specific methods for doing so and did not explicitly tell Perron to change his sales strategy. (Perron Dep. 112–15, ECF No. 37-1.) Perron prepared a plan and regularly communicated with Tackett on his progress. (*Id.* at 112, 137–38, 143–48.) However, Perron did not close any new business while on the improvement plan, and, as a

2

result, he was terminated on February 17, 2020. (*Id.* at 213; ECF No. 37-22 at 5.) The morning of the termination, Tackett sent Perron a completed performance review. Tackett gave Perron an overall score of 1.18 out of 4 and commented that Perron needed to "be willing to change and try new things" and "be[] open to new ideas" because he had been "stuck visiting the same customers and clients" that had not delivered any new growth. (ECF No. 37-10 at 5, 9.)

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the Court of the basis for its motion and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the non-moving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict" for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

**Discussion**

In pertinent part, the ADEA protects employees who are at least forty years old from being discharged because of their age. 29 U.S.C. § 623(a)(1); 29 U.S.C. § 631(a). "A plaintiff suing under the ADEA 'must prove, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action.'" *Sinha v. Bradley Univ.*, 995 F.3d 568, 574 (7th Cir. 2021) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009)). The Court must evaluate all evidence together as a whole, and the ultimate question is whether the non-moving party has produced sufficient evidence to support a jury verdict of intentional discrimination. *Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 986 F.3d 711, 718 (7th Cir. 2021); *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). Perron has not met that standard.

Veolia claims it terminated Perron because he was not performing satisfactorily. Both parties agree that Perron's "job was to get new business." (Perron Dep. 75, ECF No. 37-1.) The crux of Perron's claim is that he did close new business and, moreover, he closed more new business than a younger salesperson who was not terminated. He argues that this comparative evidence, coupled with Tackett's use of "age-related euphemisms" and reference to Perron's potential retirement, would allow a reasonable jury to conclude Perron was terminated because of his age. (Pl.'s Resp. Opp'n 20–27, ECF No. 42.) At the outset, then, the Court must address how Veolia evaluated its employees' performance and what it means to "close new business."

Perron claims that data from Salesforce, a database Veolia used, should be used in assessing his performance and whether he closed new business. This data shows him with four contract renewal and one new business "wins," and Josh Berezowsky, the younger comparator, with zero "wins." (Pl.'s Resp. Opp'n 22, ECF No. 42; ECF No. 38 at 2–3; ECF No. 40 at 2–4.) Veolia counters that Tackett did not rely on Salesforce in assessing employee performance, and that Veolia considered new business "closed" when a client signs a contract with Veolia, not when an employee marks the deal as "won" in Salesforce. (Def.'s Reply 4–8, ECF No. 44.) In support, Veolia cites Perron's own testimony that a new business sale closes "[w]hen the contract is signed." (Perron Dep. 38–39, ECF No. 37-1.) Perron's testimony also indicates that when Tackett reviewed Perron's performance, he did so by asking Perron to provide information to him directly, not by looking to Salesforce. (Perron Dep. 87–94, 107–09, 135–38, 145–46, ECF No. 37-1.)

Thus, the undisputed facts show that Tackett did not use Salesforce in deciding to place Perron on an improvement plan and, ultimately, to terminate him. Perron's argument, then, is not that Tackett used Salesforce, but that he should have, or that the Court should. However, "[f]or summary judgment purposes, [Perron] cannot create a factual dispute by stating that his job responsibilities ought to have been something other than what the company expected." *Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 464 (7th Cir. 2014). Perron's responsibility was to close new business, and Veolia considered business "closed" when a contract was signed, not when an

employee updated Salesforce. Therefore, under Veolia's standards, Perron did not close any new business contracts.[1]

In that same vein, it is not the Court's concern that disregarding Perron's successful contract renewals and focusing exclusively on his new business performance "would unfairly penalize Perron for doing what was asked of him at the start of his employment." (Pl.'s Resp. Opp'n 31, ECF No. 42.) An employer "is entitled to define" the scope of an employee's job responsibility, and if an employee is "not doing what [his employer] wanted him to do, then he was not meeting his employer's legitimate job expectations." *Widmar*, 772 F.3d at 464–66. Tackett testified that securing new business was more important to Veolia than renewing existing contracts. (Tackett Dep. 132–34, ECF No. 35-10.) The Court "need not determine whether it was wise or fair" that Veolia and Tackett expected Perron to close new business in the ten months he was not working on renewals, only that Veolia "honestly expected him to do so." *Widmar*, 772 F.3d at 466. Perron's testimony confirms that Veolia honestly expected him to do so. (Perron Dep. 75, 114, ECF No. 37-1.) Therefore, the closing of new business contracts is the key metric against which Perron's performance is measured. *See Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002) (employee's performance in previous position, where her

---

[1] Perron argues he closed new business contracts with the City of Dale and the City of Lynnville. While Veolia had been selected to move forward on a project with Dale, Dale did not sign a contract with Veolia during Perron's employment. (Perron Dep. 116–18, ECF No. 37-1.) Similarly, the new business contract with Lynnville was signed in June or July 2020, four or five months after Perron was terminated. (Tackett Dep. 109, ECF No. 35-10.) Therefore, neither of these deals had "closed" when Perron was terminated.

responsibilities were substantially different, is irrelevant to whether she was meeting employer's expectations in new position at the time of termination).

With this in mind, the Court turns to the evidence.

A. <u>Less Favorable Treatment and Age-Related Euphemisms</u>

Perron claims that Josh Berezowsky, a thirty-three-year-old director of business development, had not closed any new business but was not terminated or placed on a performance improvement plan, suggesting Perron was treated differently because of his age.

When offering comparative evidence, a plaintiff must show that a comparator "dealt with the same supervisor," was "subject to the same standards," and "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 369 (7th Cir. 2019) (cleaned up). Berezowsky meets the first two requirements: he reported to Tackett and, as a director of business development, was responsible for closing new business. (Tackett Dep. 21, ECF No. 35-10.) However, "differentiating or mitigating circumstances" distinguish Berezowsky's conduct and explain why Tackett treated him differently—namely, Berezowsky engaged in behavior that Tackett thought would lead to success, whereas Perron did not.

Behavior that would *lead* to success is important because neither Perron nor Berezowsky had success—neither closed any new business contracts. However, in Tackett's view, Berezowsky was "doing all the right things" that would result in

7

winning new business, while Perron was not. (Tackett Decl. ¶ 29, ECF No. 35-15.) Tackett believed that responding to requests for proposals was the best way for Veolia to win new business. (Tackett Dep. 130–32, ECF No. 35-10.) But Perron was not focused on responding to requests for proposals. Instead, to secure new business, Perron was "doing the research on what the issues were in those communities, reaching out to the local decision makers, meeting with them, getting a better understanding of their needs, their desires, and talking to them about how, how Veolia could help bring solutions to the issues that they faced." (Perron Dep. 50–51, ECF No. 37-1.) None of the communities Perron was targeting had issued requests for proposals, and only one was accepting expressions of interest, a more preliminary step in the sales process. (*Id.* at 51–54.) Tackett did not think Perron's focus on relationship building was an effective sales technique. (Tackett Dep. 130–32, ECF No. 35-10.)

In all, including one project Perron considered "equivalent" to a proposal, Perron submitted three proposals for new business in ten months—an average of 0.3 proposals per month. (Perron Dep. 244–45, ECF No. 37-1.) In contrast, Berezowsky submitted ten proposals in eighteen months—an average of 0.56 proposals per month. (Tackett Decl. ¶ 28, ECF No. 35-15; Tackett Dep. 121, ECF No. 35-10.) Since Berezowsky engaged in nearly twice as much of the behavior Tackett believed was most likely to result in winning new business, Berezowsky is not an appropriate comparator. *See Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751–52 (7th Cir. 2006) (employees were not similarly situated when comparator did not "share in [the

plaintiff's] other alleged shortcomings"); *see also Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 509 (7th Cir. 2017) (employees were not similarly situated when alleged comparator's failings were not comparable to plaintiff's failings).

Berezowsky is not similarly situated for another reason: he tried new things. (Tackett Dep. 128–30, ECF No. 35-10.) When one approach was not working, he tried something else. (*Id.*) On the other hand, despite not securing new business, Perron stuck to the "status quo" and made "no changes" to his approach. (ECF No. 37-10 at 5.) Tackett praised Berezowsky's ability to try new things, but noted in Perron's performance review that "in order to grow this region, [Perron] must be willing to change and try new things." (*Id.*)

Perron claims that these comments amount to an "old dogs can't learn new tricks" age-based stereotype, and therefore Berezowsky cannot be distinguished on this basis. (Pl.'s Resp. Opp'n 22, ECF No. 42.) But the Seventh Circuit has already rejected this argument, finding that comments that an employee had a "low energy level" and was "resistant to change," standing alone, did not raise an inference of age discrimination. *Richter v. Hook-SupeRx, Inc.*, 142 F.3d 1024, 1032 (7th Cir. 1998). Perron counters that his case is different because Tackett's comments don't "stand alone"—Perron also has the comparative evidence of how Berezowsky was treated and the references to Perron's retirement. But the Court just described the "differentiating or mitigating circumstances" that make Berezowsky an unsuitable comparator, and it will explain shortly why the retirement references are not discriminatory. Thus, Tackett's comments do stand alone, and they are not sufficient

9

to raise an inference of age discrimination. *Cf. Huff v. UARCO, Inc.*, 122 F.3d 374, 385 (7th Cir. 1997) (denying defendant's motion for summary judgment because comments that explicitly referenced employees' ages did not "stand alone"; company also violated its own policy when it terminated plaintiffs).

Not only has the Seventh Circuit found similar comments insufficient, but the broader context of Tackett's comments dispels any possible inference of discrimination. To be sure, the Court must draw all reasonable inferences in Perron's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). But that benefit extends only to reasonable inferences, "not every conceivable one," *Spitz v. Proven Winners N. Am., LLC,* 759 F.3d 724, 730 (7th Cir. 2014), and inferences "that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008) (quoting *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004)). The reasonableness of an inference of discriminatory intent depends on "the nature of the alleged discriminatory remarks, their relationship to the employment decision in question, the nature of the stated reason for the employer's action, and the existence of other evidence calling that reason into doubt." *Fuka v. Thomson Consumer Elecs.*, 82 F.3d 1397, 1406 (7th Cir. 1996).

Two details support an inference that Tackett's comments were discriminatory: Tackett was the decisionmaker responsible for Perron's termination, and he made the comments on the day of Perron's termination. But the details in Perron's favor stop there.

First, while people of any age can discriminate, *Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 842 (7th Cir. 1996), Tackett was forty-seven years old at the time of the comments, so he was also a member of the protected class. *Richter*, 142 F.3d at 1032 (noting it was "significant" that decisionmakers were also members of the protected class in concluding comments did not lead to inference of age discrimination); (Tackett Dep. 7, ECF No. 35-10). Tackett hired a fifty-three-year-old as Perron's replacement, and seven of Tackett's direct reports are over sixty years old but have not been terminated. *See Richter*, 142 F.3d at 1032 (finding it relevant that employees over forty were retained while some under forty were terminated); (ECF No. 35-11). Further, Tackett's comments were made in the context of a performance review, and the review prompted Tackett to assess whether Perron "adapts to change," "is open to new ideas," "adjusts plans to meet changing needs," "challenges the status quo," "encourages innovation," and "solves problems creatively," among other areas—so Tackett was simply responding to the review's prompts when he commented that Perron needed to "be willing to change" and be "open to new ideas," rather than sticking to the "status quo." (ECF No. 37-10 at 5, 9.)

Finally, Perron lacks "other evidence calling [Tackett's] reason [for terminating Perron] into doubt." *Fuka*, 82 F.3d at 1406. For over eight months, despite focusing exclusively on trying to secure new business, Perron did not close a new business contract. Tackett placed Perron on a performance improvement plan and asked him what he would "do[] differently than before to ensure success." (Perron Dep. 127, ECF No. 37-1.) But Perron still did not close any new business in the two months he

11

was on the plan. Given this evidence, it is not reasonable to infer that Tackett's comments were discriminatory. *See Dass v. Chi. Bd. of Educ.*, 675 F.3d 1060, 1072 (7th Cir. 2012) (no rational juror could find Indian teacher's non-renewal was due to her national origin, rather than her inability to maintain control of classroom, even if comment that she should "look for another job on the North side where most of the Indians go" had been closer in time to non-renewal because undisputed facts showed she was non-renewed because she could not control her class).

Perron argues that Tackett did not previously communicate these criticisms or offer any suggestions as to how to change his sales approach. (Pl.'s Resp. Opp'n 23–24, ECF No. 42.) He contends a jury could reasonably infer that Tackett would not have made these same criticisms about a younger employee, at least not without first instructing that employee on how to change his approach. (*Id.*) But he offers no evidence to support this inference—on the contrary, Tackett testified that he did not coach Berezowsky into changing his approach, but that Berezowsky did so on his own. (Tackett Dep. 141, ECF No. 35-10.) The Court's obligation to draw inferences in Perron's favor does not extend to inferences "that are supported by only speculation or conjecture." *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (quoting *Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008)). That is all Perron offers in support of his argument that Tackett's comments were discriminatory.

Similarly, Perron contends that a jury would not need to believe Tackett's explanation that he treated Perron and Berezowsky differently due to Berezowsky's

12

willingness to try new sales tactics because Tackett "contradicted himself" by testifying that results mattered more to him than process. (Tackett Dep. 102–03, ECF No. 35-10.) But as Tackett noted, Perron's "process was not showing any results." (*Id.*) In contrast, Tackett believed Berezowsky's process would lead to results. (*Id.* at 129–32.) It makes sense that, since neither employee produced results, Tackett would distinguish the two based on their process. Providing this as a rationale when neither Perron's results nor process was meeting Tackett's expectations does not lead to an inference of discrimination.

Without any evidence of discrimination, "any shortcomings in [Veolia's] handling of the situation"—for example, Tackett's failure to suggest alternative strategies or explicitly instruct Perron to change his approach—is not subject to redress by the Court. *Leffel v. Valley Fin. Servs.*, 113 F.3d 787, 795 (7th Cir. 1997).

B. References to Retirement

Perron also asserts that a jury could infer he was discriminated against because he was asked whether he had any plans to retire. This contention can be dismissed summarily. When an employee in the protected age group is "hounded about retirement despite evidence of adequate performance," the "repeated references to retirement may permit a jury to infer discrimination." *Kaniff v. Allstate Ins. Co.*, 121 F.3d 258, 263 (7th Cir. 1997). Perron was not hounded. In a succession planning meeting, Perron's name was listed on a spreadsheet identifying those who would be eligible for retirement that year. (Perron Dep. 202, 206–08, ECF No. 37-1.) Tackett asked whether Perron had any plans to retire, Perron said no, and that was the end

13

of it. (*Id.*) This is not the sort of "repeated references to retirement" that may "reflect the employer's intention to rid itself of older workers by subtly pressuring them into retiring" and allow a jury to infer discrimination. *Kaniff*, 121 F.3d at 263.

Nor can considering this incident in combination with the other evidence salvage Perron's claim. To be sure, "[e]vidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). But "'[a]n overload of irrelevant or nonprobative facts' will not 'add up to relevant evidence of discriminatory intent . . . . [Z]ero plus zero is zero.'" *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 880 (7th Cir. 2016) (quoting *Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 763 (7th Cir. 2001)). A single inquiry about retirement is not discriminatory, Berezowsky is not an appropriate comparator who was treated more favorably, and Tackett's comments in Perron's performance review could not reasonably lead to an inference of discriminatory intent. These incidents were not discriminatory in isolation and are not discriminatory in combination.

For the same reasons, Perron's claim would fare no better under the *McDonnell Douglas* framework. Again, the test is whether Perron has produced sufficient evidence to support a jury verdict of intentional discrimination, and *McDonnell Douglas* is just one means of presenting that evidence. *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). But even if the Court were to evaluate Perron's evidence through the *McDonnell Douglas* lens, Perron cannot

14

establish a prima facie case of discrimination or show that Veolia's reason for terminating him is pretextual. *Id.* at 225 (reciting framework).

"Absent valid comparators, [a plaintiff] cannot survive summary judgment under the [*McDonnell Douglas*] method of proof because he fail[s] to establish a prima facie case" of discrimination. *Tank v. T-Mobile USA, Inc.*, 758 F.3d 800, 810 (7th Cir. 2014). As previously discussed, Berezowsky is not a suitable comparator. Perron also asserts he was treated less favorably than his replacement, Michael Moler, because Tackett did not place Moler on a performance improvement plan until a year after Moler was hired, whereas Tackett placed Perron on a plan two months after Tackett became Perron's supervisor. (Tackett Dep. 58, 119–20, ECF No. 35-10.) However, the time Tackett became Perron's supervisor is not the appropriate reference point. Perron's improvement plan came over sixteen months after his hire date and nearly nine months after he had been focused exclusively on securing new business. (*Id.* at 58.) Moreover, Moler had closed one new business contract, whereas Perron had not closed any. (ECF Nos. 38, 39.) The purpose of the prima facie case is to produce "evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion . . . ." *Hartley v. Wis. Bell, Inc.*, 124 F.3d 887, 892 (7th Cir. 1997) (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996)). Evidence that Tackett placed Moler on an improvement plan one year into employment, despite closing one new business contract, but placed Perron on a plan sixteen months into employment and nine months into focusing on securing new business, despite closing zero new business contracts, is not "adequate

15

to create an inference" that age played a factor in Tackett's decision as to when to implement the plans. Therefore, Moler is not a similarly situated employee who was treated more favorably, and Perron cannot establish a prima facie case of discrimination. Even if he could, Perron's pretext argument relies on the differential treatment of him and Berezowsky, which the Court has already rejected.

In short, no reasonable jury could find that Perron would not have been terminated "but for" his age. Therefore, summary judgment in Veolia's favor is appropriate.

## Conclusion

Veolia's motion for summary judgment, (ECF No. 35), is **granted**. Perron's age discrimination claim is **dismissed with prejudice**. Final judgment shall issue in a separate order.

**SO ORDERED.**

Date: 10/21/2021

*JAMES R. SWEENEY II, JUDGE*
United States District Court
Southern District of Indiana

Distribution to registered parties of record via CM/ECF.